# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DONALD CHAPMAN,
    *Plaintiff,*

    v.

RING'S END, INC.,
    *Defendant.*

No. 3:17-cv-01084 (VAB)

## ORDER ON MOTION TO SHOW CAUSE

Donald Chapman ("Plaintiff") has sued Ring's End, Inc. ("Ring's End" or "Defendant"), alleging violations of the Family Medical Leave Act ("FMLA") and state statutes prohibiting the discrimination and retaliation against individuals with disabilities. *See* Second Am. Compl., ECF No. 28-2 (Feb. 21, 2018).

Following a telephonic conference on the question of Plaintiff's competency to continue prosecuting the case, the Court directed the parties to submit additional briefing on the following two questions:

    1.  What is the Court's authority to determine Plaintiff's incompetence, within the meaning of Rule 17(c) of the Federal Rules of Civil Procedure?

    2.  What is Plaintiff's ability to prosecute this case, either by himself or through a next friend?

Order, ECF No. 47 (July 18, 2018) ("Order for Add'l Briefing").

Both parties have filed responses. Resp., ECF No. 49 (Sept. 12, 2018) ("Pl.'s Resp."); Suppl. Resp. to Order to Show Cause, ECF No. 54 (Oct. 5, 2018) ("Def.'s Resp.").

For the reasons discussed below, on this record, there is no legal basis for this Court to appoint a guardian ad litem or declare Mr. Chapman incompetent to proceed in this case.

If the counsel for Mr. Chapman, however, cannot move this litigation forward by **September 25, 2020**, either by providing the proper medical evidence to have a guardian ad litem appointed or having the proper party moved to substitute as a plaintiff in Mr. Chapman's place, then this case may be dismissed for a failure to prosecute.[1]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[2]

Ring's End allegedly is a corporation organized under the laws of Connecticut and operates lumber yards throughout New York and Connecticut. Second Am. Compl. ¶¶ 2–3, ECF No. 28-2 (Feb. 21, 2018).

---

[1] The Court acknowledges and apologizes for the considerable delay in issuing this ruling. This delay is inexcusable.

To the extent that Mr. Chapman is incapacitated and unable to conduct his personal affairs at all, beyond this lawsuit, however, the substantial delay in this ruling should have provided more than ample time for the appropriate party to have obtained the necessary medical evidence and/or legal authority necessary to act on Mr. Chapman's behalf. In other words, if Mr. Chapman cannot make decisions for himself, the necessity for an appropriate party to represent him extends far beyond this lawsuit. *See Luster v. Luster*, 128 Conn. App. 259, 270 (2011) ("'A conservator is a fiduciary. . . .'" whose duties "'are clearly defined in . . . [Conn. Gen. Stat.] § 45a–656, which prescribes the duties of a conservator of the person.'" (quoting *Probate of Marcus*, 199 Conn. 524, 533 (1986); *Jewish Home For The Elderly of Fairfield Cty., Inc. v. Cantore*, 257 Conn. 531, 539–40 (2001)).

> The conservator of the person shall have . . . duties and authority [which] may include: (1) [ ] duty and responsibility for the general custody of the conserved person; (2) [ ] authority to establish the conserved person's residence within the state, . . . (3) [ ] authority to give consent for . . . medical or other professional care, counsel, treatment or service; (4) [ ] duty to provide for the care, comfort and maintenance of the conserved person; (5) [ ] authority to execute a written document in advance of the conserved person's death, . . . ; and (6) the duty to take reasonable care of the conserved person's personal effects.

Conn. Gen. Stat. § 45a-656(a).

Nevertheless, if good cause is shown for the extension of the September 25, 2020 deadline, the Court will consider this request, to the extent that the Court's own delay in addressing this matter provides an equitable basis for more time. *See* Fed. R. Civ. P. 6(b) (a "court may, for good cause, extend the time" for a deadline "if a request is made[] before the original time or its extension expires"); *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) ("A finding of good cause depends on the diligence of the moving party."); *Manigault v. ABC Inc.*, 796 F. App'x 13, 15, (2d Cir. 2019) (summary order) (good cause existed to extend answer deadline because movant "sought an extension because it had not been served with the exhibits attached to the complaint.").

[2] All factual allegations are taken from Plaintiff's Second Amended Complaint, ECF No. 28-2.

Ring's End allegedly employed Mr. Chapman for twenty-five years as a fork life operator at its Niantic, Connecticut business location. *Id.* ¶¶ 4.

On January 6, 2016, Mr. Chapman allegedly sustained a work injury to his shoulder, for which his doctor allegedly "maintained him on temporary total disability until March 21, 2016." *Id.* ¶ 5. Ring's End allegedly placed Mr. Chapman on FMLA leave while he was out of work due to the work injury. *Id.*

On July 18, 2016, Mr. Chapman allegedly sustained a stroke, and his physician allegedly placed him out of work. *Id.* ¶ 6. Mr. Chapman's wife allegedly informed Human Resources at Ring's End of his medical condition and that his physician had placed him out of work. *Id.*

On July 26, 2016, Ring's End allegedly issued Mr. Chapman a letter giving notice that his medical leave of absence would be counted against his remaining FMLA entitlement and that he had 8.5 weeks remaining of leave. *Id.* Mr. Chapman alleges that, aside from this letter, he was not asked to complete an FMLA leave application or given a form for his treating physician to complete, nor did Ring's End give him any instructions as to his rights under FMLA or processes while he was placed on FMLA leave. *Id.* ¶ 7.

On September 6, 2016, Mr. Chapman's wife allegedly left a voicemail message for Tara Boccuzzi, a Ring's End Human Resources employee; but her voicemail allegedly was not returned. *Id.* ¶¶ 8, 14.

On September 19, 2016, Ring's End Human Resources allegedly issued a letter to Mr. Chapman stating that his FMLA leave had expired and his employment was terminated. *Id.* ¶ 13.

On September 20, 2016, Ms. Boccuzzi allegedly sent Mr. Chapman an e-mail "attaching the company profit sharing form for him to make his election and return" the form. *Id.* ¶ 14. The e-mail also allegedly attached "the company's Handbook with an effective date of November 16,

2016" and informed Mr. Chapman that Ms. Boccuzzi "was paying the extended sick pay and [personal time off] [t]hrough October 19, 2016." *Id.* ¶ 14.

On September 22, 2016, Mr. Chapman's wife allegedly left a voicemail for a Ring's End vice president, but her voicemail allegedly was not returned. *Id.* ¶ 9.

On October 12, 2016, Mr. Chapman's neurologist allegedly sent an e-mail to Ring's End Human Resources giving Mr. Chapman permission to return to work immediately for four hours per day. *Id.* ¶ 10. On the same day, Mr. Chapman allegedly called the vice president, and his wife allegedly called Ms. Boccuzzi, leaving voicemails regarding Mr. Chapman's return to work. *Id.* ¶¶ 11–12. These voicemails were allegedly not returned. *Id.* ¶ 12. Mr. Chapman allegedly "made several efforts to get back to work in accordance with the doctor's instruction," but his outreach to Ring's End was allegedly unacknowledged. *Id.*

On October 20, 2016, Ms. Boccuzzi allegedly sent Mr. Chapman another letter stating that his FMLA leave had expired and that he was terminated effective October 1, 2016. *Id.* ¶ 15.

On October 24, 2016, Mr. Chapman allegedly received a COBRA letter terminating his health insurance. *Id.*

At the end of October 2016, Mr. Chapman allegedly had a telephone conversation with John Giordana, the head of Ring's End Human Resources, during which Mr. Giordana allegedly stated that Mr. Chapman was fired because Ring's End "need[ed] someone to do the job." *Id.* ¶¶ 18–19.

Mr. Chapman was allegedly fifty-six years old at the time of his termination. *Id.* ¶ 16. He alleges that Ring's End posted a listing for his job before he was terminated. *Id.* ¶ 17. He alleges further that he was denied any accommodation based on his medical condition. *Id.* ¶ 19.

Mr. Chapman also alleges that Ring's End provided him with a life insurance policy prior to his termination which stated: "Should you become completely disabled before age 60, your Life Insurance will be kept in force, without premium, for as long as you remain disabled." *Id.* ¶¶ 21–22. He alleges that, "[d]espite terminating Plaintiff for the ostensible reason[] that he was completely disabled and unable to work for the Defendant in any capacity, the Defendant ceased paying Plaintiff's premiums for the [life insurance policy] on September 1, 2016, causing the [policy] to be cancelled, in express contradiction of the representation Defendant had made to Plaintiff in the plan documents." *Id.* ¶ 23.

## B.  PROCEDURAL HISTORY

On June 5, 2017, Mr. Chapman sued Ring's End in Connecticut Superior Court for the Judicial District of New London. Ex. A to Notice of Removal, ECF No. 1 at 8–14 (June 5, 2017) ("Compl."). Ring's End subsequently removed this case to federal court. Notice of Removal, ECF No. 1 (June 29, 2017).

On October 4, 2017, Mr. Chapman filed an Amended Complaint. Am. Compl., ECF No. 21 (Oct. 4, 2017) ("First Am. Compl.").

On February 21, 2018, Mr. Chapman filed a motion to amend his amended complaint. Mot. to Amend/Correct, ECF No. 28 (Feb. 21, 2018); Mem. in Supp. of Pl.'s Mot. to Amend, ECF No. 28-1 (Feb. 21, 2018). He simultaneously filed his proposed second amended Complaint, alleging disability discrimination in violation of Conn. Gen. Stat. § 46a-60(a)(1); failure to accommodate in violation of Conn. Gen. Stat. § 46a-60(a)(1); retaliation in violation of Conn. Gen. Stat. § 31-290a; interference with Plaintiff's rights and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2612 *et seq.*; and denial of insurance plan benefits under 29 U.S.C. § 1132(a)(1)(B). Second Am. Compl.

On May 21, 2018, the Court granted Plaintiff's motion to amend. Order Granting Mot. to Amend, ECF No. 31 (May 21, 2018).

On June 6, 2018, the parties moved jointly for a discovery conference "to seek the Court's guidance regarding how to proceed in light of concerns over the Plaintiff's health, including his capacity to sit for a deposition (currently noticed for June 19, 2018) and to engage in settlement negotiations." Joint Mot. for Disc. Conf., ECF No. 32 (June 6, 2018).

On June 18, 2018, following a telephonic status conference, Minute Entry, ECF No. 36 (June 18, 2018); the Court ordered Mr. Chapman to show cause as to "why this lawsuit should continue and address whether he is legally capable of continuing to prosecute this case," noting that "Mr. Chapman's capacity to continue this lawsuit ha[d] been raised, following a stroke and his subsequent inability to participate fully in court proceedings," Order to Show Cause, ECF No. 37 (June 18, 2018). The Court set a briefing schedule and set a show cause hearing for July 18, 2018. *Id.*

On July 6, 2018, Mr. Chapman filed a response to the Court's order to show cause, Pl.'s Resp., ECF No. 42 (July 6, 2018); along with an affidavit from Mr. Chapman's spouse, Denise Chapman Aff., ECF No. 42-1 (July 6, 2018).

On the same day, Ring's End filed a motion for order, stating that Plaintiff had not responded to its request that Mr. Chapman "produce all medical records related to his mental capacity and update his responses to discovery requests related to Plaintiff's health records and medical treatment." Mot. for Order, ECF No. 41 (July 6, 2018). Ring's End stated that it had "subpoenaed and/or intend[ed] to subpoena" several medical providers identified by Mr. Chapman during discovery to obtain copies of Mr. Chapman's medical records, but that, "[i]n light of Plaintiff's counsel's representations as to Plaintiff's lack of capacity, Defendant is unable

to secure authorizations from Plaintiff[.]" *Id.* at 1–2. Defendant therefore sought an order from the Court authorizing those medical providers covered under HIPAA to disclose Mr. Chapman's medical records to Defendant's counsel. *Id.* at 2. Defendant attached its emails sent to Plaintiff's counsel containing copies of the subpoenas. Exs. to Mot. for Order, ECF No. 41-2 (July 6, 2018) ("Def.'s Subpoenas for Pl.'s Med. Records").

On July 9, 2018, the Court denied Defendant's motion for order without prejudice to renewal following the hearing scheduled for July 18, 2018. Order, ECF No. 43 (July 9, 2018).

On July 13, 2018, Ring's End responded to Mr. Chapman's response to the Court's order to show case. Def.'s Resp., ECF No. 44 (July 13, 2018).

On July 18, 2018, the Court held a show cause hearing. Minute Entry, ECF No. 45 (July 18, 2018). The Court then ordered parties submit additional briefing addressing the questions articulated above, and continued the hearing to a later date. Order for Add'l Briefing.

On the same day, the Court ordered that Defendants were permitted to serve subpoenas under Rule 45 of the Federal Rules of Civil Procedure on several named medical providers "to obtain copies of all medical records within their custody and control for treatment sought and/or received by [Plaintiff] . . . from 2008 to the present," and that those providers shall produce such records by July 27, 2018. Order, ECF No. 46 (July 18, 2018).

On September 12, 2018, Mr. Chapman filed his response to the Court's order for additional briefing. Resp., ECF No. 49 (Sept. 12, 2018) ("Pl.'s Suppl. Resp.").

On October 5, 2018, Ring's End filed its response. Resp., ECF No. 54 (Oct. 5, 2018) ("Def.'s Suppl. Resp.").

## II.   DISCUSSION

### A.  The Court's Authority to Determine Plaintiff's Incompetence

Rule 17(c)(2) of the Federal Rules of Civil Procedure provides that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2).

As a result, upon receipt of "verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent," courts must consider whether a guardian ad litem should be appointed under Rule 17(c). *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003) ("If a court . . . received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent, it likely would be an abuse of the court's discretion not to consider whether Rule 17(c) applied.").

Rule 17(c) does not "*require*[] courts to inquire into the necessity of appointing a guardian ad litem absent verifiable evidence of mental incapacity;" however, "nothing in that rule *prevents* a district court from exercising its discretion to consider *sua sponte* the appropriateness of appointing a guardian ad litem for a litigant whose behavior raises a significant question regarding his or her mental competency." *Id.* (emphasis in the original). "Indeed, such consideration may be particularly appropriate in the case of a defendant who shows signs of severe incapacity, in part because a judgment entered against a mentally incompetent defendant not represented by a guardian or a guardian ad litem may be subject to collateral attack at a later date." *Id.*

8

A "district judge should be aware," when determining whether Rule 17(c) applies, "that due process considerations attend an incompetency finding and the subsequent appointment of a guardian ad litem." *Ferrelli*, 323 F.3d at 203 (citing *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 651 (2d Cir. 1999) (a finding of finding of incompetence made pursuant to Rule 17(c) must meet requirements of due process)); *Musaid v. Manka*, No. 13-CV-7880 (PKC) (MHD), 2016 WL 540806, at *1 (S.D.N.Y. Feb. 9, 2016) (district court noting that, "[i]n light of plaintiff's history of psychiatric evaluations," it had instructed magistrate judge that he could consider, under Rule 17(c), "whether the appointment of a guardian ad litem is necessary to protect [plaintiff's] interests in this case.").

Mr. Chapman asserts that, under *Ferrelli*, "the Court has the authority, and indeed an obligation, to make a determination whether a litigant is incompetent under Rule 17(c) when there is verified medical evidence before it suggesting that a litigant lacks mental capacity." Pl.'s Suppl. Resp. at 3. He also argues that the "court may, in its discretion, conduct an inquiry into a party's competency under Rule 17(c) any time there is 'a significant question regarding a litigant's mental competency.'" *Id.* at 2 (quoting *Ferrelli*, 323 F.3d at 203).

Ring's End argues that, "[w]hile this Court has a duty of inquiry as to the competency of a litigant" under *Ferrelli*, "the burden of proof rests on the party asserting the incompetency, here the Plaintiff, a burden which has not been met in this case." Def.'s Suppl. Resp. at 2 (citing *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012) ("We cannot expect district judges to do any more than undertake a duty of inquiry as to whether there may be a viable basis to invoke Rule 17. That duty of inquiry involves a determination of whether there is verifiable evidence of incompetence."). In Defendant's view, because "Plaintiff has declined to pursue adjudication of incompetency in the probate court system . . . and has failed to provide evidence from a health

9

professional. . . . Defendant and the Court are left with no information beyond Plaintiff's wife's and counsel's lay representations that Plaintiff is impaired in understanding and producing speech." *Id.* at 2–3 (citing *Singletary v. PNC Bank Nat'l Ass'n*, No. CV 16-2098, 2017 WL 714035, at \*3 (E.D. Pa. Feb. 22, 2017) (dismissing case, stating: "Without any verifiable evidence of incompetence, I am not required to consider my obligation to appoint a guardian pursuant to Rule 17(c).").

The Court agrees.

"The duty to appoint a guardian ad litem or 'make such order as it deems proper,' is triggered by 'actual documentation or testimony' of mental incompetency[.]" *Perri v. City of New York*, 350 F. App'x 489, 491 (2d Cir. 2009) (quoting Fed. R. Civ. P. 17(c)(2); *Ferrelli*, 323 F.3d at 201 n.4) (affirming a district court finding of incompetency based on "an evaluation by a mental health professional employed by a public agency that details plaintiff's long history of mental illness, indicates that such illness causes him to have difficulty functioning, and recommends that he be represented by a guardian ad litem in an unrelated state court proceeding."); *see also Lewis v. Newburgh Hous. Auth.*, 692 F. App'x 673, 675 (2d Cir. 2017) (summary order), *as amended* (July 6, 2017) (finding that the district court's knowledge that the plaintiff "was previously found incompetent in a recent federal criminal case" and was in state custody at a psychiatric institution that provides inpatient services for pre-trial detainees triggered the court's duty to decide whether Rule 17(c) applies); *Cannon v. Port Auth. of N.Y. & N.J.*, No. 15-CV-4579 (RA), 2017 WL 4084048, at \*1–\*2 (S.D.N.Y. Sept. 13, 2017) (finding that the court's authority to evaluate plaintiff's competency under Rule 17(c) was triggered by his "medical records document[ing] a long history of mental illness," including "notes indicat[ing] he presented as paranoid or bizarre], and his prior stay "at a state hospital tasked

with adjudicating patients' competency[]" (citing *Lewis*, 692 F. App'x at 675)); *Bowen v. Rubin*, 213 F. Supp. 2d 220, 224 (E.D.N.Y. 2001) (granting plaintiffs' motion to be appointed guardians ad litem where they "submitted the declarations of their treating psychiatrists, individuals who are in the best position to comment on plaintiffs' competency as litigants," and evidence from a state department of health investigation into the facility where plaintiffs lived).

Where there is no verifiable evidence of a plaintiff's incapacity, the Court therefore is not required to consider whether Rule 17(c) applies. *See Ferrelli*, 323 F.3d at 201 n.4 ("[A]bsent actual documentation or testimony by a mental health professional, a court of record, or a relevant public agency, the district court is not required to undertake an inquiry into a *pro se* litigant's mental capacity"); *Powell*, 680 F.3d at 307 ("[B]izarre behavior alone is insufficient to trigger a mandatory inquiry into a litigant's competency." (citing *Ferrelli*, 323 F.3d at 201)). Indeed, although nothing in Rule 17(c) or within Second Circuit precedent categorically prohibits the Court's *sua sponte* inquiry into the applicability of the Rule, due process considerations regarding Mr. Chapman's ability to prosecute his own case weigh against the Court applying Rule 17(c).

Because Mr. Chapman—or someone legally authorized to do so on his behalf—has not provided any verifiable medical or adjudicatory evidence of his mental incapacity to either the Court or to Ring's End, as represented in Defendant's supplemental response, *see* Def.'s Suppl. Resp. at 2, absent such evidence, the Court need not and will not consider whether Mr. Chapman is incompetent under Rule 17(c). *See Powell*, 680 F.3d at 307 ("We cannot expect district judges to do any more than undertake a duty of inquiry as to whether there may be a viable basis to invoke Rule 17. That duty of inquiry involves a determination of whether there is verifiable evidence of incompetence."). "The obligation imposed by the final sentence of Rule 17(c)—the

duty to 'appoint' [a guardian ad litem] or 'make such other order'—arises after a determination of incompetency." *Ferrelli*, 323 F.3d at 201.

Accordingly, because the Court does not invoke Rule 17(c) at this time, and therefore will not make a determination of incompetency, the Court will not appoint a guardian ad litem under Rule 17(c).

### B.  The Plaintiff's Ability to Prosecute this case, either by himself or through a next friend

Under Rule 17(b), the capacity of a party to sue or be sued "shall be determined by the law of the party's domicile." Fed. R. Civ. P. 17(b); *see also Jordan v. Metro-N. Commuter R.R. Co.*, No. 3:13-cv-749 (JBA), 2015 WL 5684027, at *2 (D. Conn. Sept. 28, 2015) ("Under Federal Rule of Civil Procedure 17(b), the capacity of an individual to sue is determined by the law of the state where the court is located."); *Mil'chamot v. N.Y.C. Hous. Auth.*, No. 15-CIV-108 (PAE) (HBP), 2016 WL 7756626, at *3 (S.D.N.Y. Dec. 20, 2016) ("Federal courts apply the law of the state of an individual's domicile to determine competence." (citing Fed. R. Civ. P. 17(b)(1)), *report and recommendation adopted*, No. 15-CV-108 (PAE) (HBP), 2017 WL 151626 (S.D.N.Y. Jan. 12, 2017).

Mr. Chapman is domiciled in Connecticut. *See* Second Am. Compl. ¶ 1.

Mr. Chapman does not set forth an argument as to whether he is competent under Connecticut law. Rather, he argues that even if he is mentally incompetent, he "has the absolute legal right to bring a claim" under Connecticut law. Pl.'s Suppl. Resp. at 3 (citing *Newman v. Newman*, 35 Conn. App. 449, 451 (1994) (The law does not deprive a person adjudicated incompetent of access to the courts . . . rather, provision is made to ensure that such interests are well represented."). He asserts that "the only consideration before the Court at this time under Connecticut law is what 'provision is [to be] made to ensure that [the Plaintiff's] . . . interests are

well represented.'" *Id.* at 4 (quoting *Newman*, 35 Conn. App. at 451). In Mr. Chapman's view,

therefore, "the Court need not, and should not, conduct an inquiry into Plaintiff's ability to

prosecute this case, either by himself or through a next friend, . . . because to do so would impair

[his] right under Connecticut law, even though mentally impaired, to sue." *Id.* Instead, he

contends that "the Court may, 'as the circumstances warrant, appoint a guardian ad litem to

ensure that the interests of the person who may be incompetent are adequately protected.'"

*Ridgeway v. Ridgeway*, 180 Conn. 533, 539 (1980). Pl.'s Mem. at 3.

Ring's End argues that "[t]o appoint a guardian ad litem without concluding that Plaintiff

lacks mental competence would be a gross disregard of his civil rights." Def.'s Suppl. Resp. at 3

(citing *Ferrelli*, 323 F.3d 196; *Neilson*, 199 F.3d at 651; *Thomas v. Humfield*, 916 F.2d 1032,

1033–34 (5th Cir. 1990) (The Second Circuit has held that "due process considerations attend an

incompetency finding and the subsequent appointment of a guardian ad litem")). Ring's End

reiterates that "Plaintiff has still provided no verifiable medical evidence on the subject to this

Court." *Id.* at 5.

The Court agrees.

A court in this District has noted that Rule 17(b)

> would seem to implicate Conn. Gen. Stat. § 45a–644(b)–(c), which
> allows the probate court to appoint a temporary or permanent
> conservator when a person is "found to be incapable of caring for
> himself," further defined as suffering from "a mental, emotional, or
> physical condition resulting from mental illness, mental deficiency,
> physical illness or disability, chronic use of drugs or alcohol, or
> confinement, which results in the person's inability to provide . . .
> protection from physical abuse or harm and which results in
> endangerment to such person's health.

*Ross ex rel. Dunham v. Lantz*, No. CIV.A. 305-cv-758 (CFD), 2005 WL 1124704, at *3–*4 (D.

Conn. May 12, 2005) (denying request to proceed as next friend to plaintiff in his habeas corpus

action because, "[d]espite suffering from various psychological disorders," plaintiff had "never

been found incompetent to stand trial or to waive his right to appeal," "responded the Court's

questioning rationally and intelligently," "is capable of caring for himself" and "capable of

consulting with his lawyer and understanding the legal and factual issues before him").

The Supreme Court of Connecticut has also recently observed that, with the passage of

Public Act 07–116 in 2007 and subsequent amendments, "the legislature made comprehensive

substantive and procedural changes to the conservatorship scheme designed to require probate

courts to respect individuals' preferences, impose the least restrictive means of intervention, and

provide more transparency and accountability in the conservatorship process." *DeNunzio v.

DeNunzio*, 320 Conn. 178, 190 (2016). These changes include "requir[ing] the Probate Court to

follow more formal procedures, under which the rules of evidence for civil proceedings apply

and testimony is taken under oath. *Id.* at 190 (citing 2007 Conn. Acts 116 § 16 (Reg. Sess.),

codified at Conn. Gen. Stat. § 45a–650(g)–(h)).

As explained above, the Court has received no medical evidence regarding Mr.

Chapman's capacity to pursue this case, nor has Mr. Chapman sought a probate court's

determination that he lacks capacity under Connecticut law. *See* Conn. Gen. Stat. § 45a-

650(c)(1)–(2) (requiring a probate court to receive medical or psychological evidence unless it is

shown that such evidence "is impossible to obtain because of the absence of the respondent or

[his] refusal to be examined," or evidence "that the alleged incapacity is not medical in nature").

Moreover, regardless of Connecticut law on the subject, "[t]he court's power to appoint a

guardian is limited by the Due Process Clause because plaintiffs 'possess[ ] liberty interests in

avoiding the stigma of being found incompetent . . . and in retaining personal control over the

litigation . . . .'" *Bowen*, 213 F. Supp. 2d at 224 (quoting *Neilson*, 199 F.3d at 651) (emphasizing,

14

when appointing guardians ad litem for plaintiffs, that plaintiffs themselves had requested such

an appointment).

"To determine the amount of process due, [courts] must weigh (1) the private interest

affected by the official action; (2) the risk of an erroneous deprivation of that interest through the

procedures used, and the probable value of additional or different procedural safeguards; and (3)

the government's interest." *Neilson*, 199 F.3d at 651 (citing *Abdullah v. I.N.S.*, 184 F.3d 158, 164

(2d Cir. 1999)); *cf. Whitmore v. Arkansas*, 495 U.S. 149, 165 ("[O]ne necessary condition for

'next friend' standing in federal court" to bring a habeas corpus action "is a showing by the

proposed 'next friend' that the real party in interest is unable to litigate his own cause due to

mental incapacity, lack of access to court, or other similar disability.").

Accordingly, given Mr. Chapman's due process interests in retaining personal control

over this litigation and the lack of medical evidence or prior adjudication of his lack of capacity,

the Court cannot find him incompetent.

In light of this ruling, counsel for Mr. Chapman should demonstrate a basis for moving

forward with this litigation by **September 25, 2020**, i.e., the proper medical evidence necessary

for consideration of a guardian ad litem appointment or the substitution of the proper party as a

plaintiff to act on Mr. Chapman's behalf, or this case may be dismissed for failure to prosecute.

*See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority

to manage their dockets and courtrooms with a view toward the efficient and expedient

resolution of cases."); *see also Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998) ("Rule 41(b)

authorizes a court to dismiss an action '[f]or failure of the plaintiff to prosecute or to comply

with . . . any order of court. . . . Unless the court in its order for dismissal otherwise specifies, a

dismissal under this subdivision . . . operates as an adjudication upon the merits.' . . . [S]uch

dismissals may be made *sua sponte*. (quoting Fed. R. Civ. P. 41(b)) (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2nd Cir. 1993))).

## III.   CONCLUSION

For the foregoing reasons, in the absence of verifiable medical evidence of Plaintiff's incompetence, the Court will not appoint a guardian ad litem at this time.

If the counsel for Mr. Chapman, however, cannot move this litigation forward by **September 25, 2020**, either by providing the proper medical evidence to have a guardian ad litem appointed or having the proper party moved to substitute as a plaintiff in Mr. Chapman's place, then this case may be dismissed for a failure to prosecute.

**SO ORDERED**, at Bridgeport, Connecticut, on this 23rd day of June, 2020.

     /S/ Victor A. Bolden
**VICTOR A. BOLDEN**
**UNITED STATES DISTRICT JUDGE**